[Cite as *In re P.B.*, 2017-Ohio-7692.]

STATE OF OHIO ) IN THE COURT OF APPEALS
)ss: NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

IN RE: P.B.                                    C.A. Nos.    28630
     T.B.                                              28637


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 15-01-28
              DN 15-01-29

DECISION AND JOURNAL ENTRY

Dated: September 20, 2017

---

CARR, Judge.

**{¶1}** Appellants, J.B. ("Mother") and E.B. ("Father"), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights to two of their minor children and placed them in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

**{¶2}** Mother and Father are the biological parents of several minor children, but only two of them are parties to this appeal: P.B., born July 25, 2005; and T.B., born July 20, 2006. Father was not living with the family when this case began. Mother and the children were living with Mother's boyfriend, Tyler, who is the father of Mother's youngest child.

**{¶3}** On January 15, 2015, CSB filed complaints alleging that P.B. was an abused and dependent child and that T.B was a dependent child because the family was homeless and Tyler

had beaten P.B., leaving significant bruising on the child. Tyler was later convicted of child endangering for injuring P.B. P.B. was adjudicated abused and T.B. was adjudicated dependent. Both children were allowed to remain in Mother's custody under an order of protective supervision. The trial court ordered that Tyler have no contact with the children.

{¶4} Five months later, CSB moved to remove the children from Mother's custody because they had witnessed an incident of domestic violence between Mother and Tyler. CSB learned that Mother had continued to expose the children to Tyler, in violation of the no contact order, and that Tyler had perpetrated violence against both children and Mother. The children engaged in counseling during this case to address the traumas in their lives. P.B., in particular, suffered from severe depression and continued to blame himself for his family's situation. P.B. was hospitalized for psychiatric treatment several times during this case.

{¶5} P.B. and T.B. were removed from Mother's custody and later placed in the temporary custody of the maternal grandmother under an order of protective supervision. Over the next several months, Father continued to have no involvement in the case and Mother failed to comply with many of the requirements of the case plan. After the children lived with her for approximately nine months, the grandmother notified CSB that she could not provide them with a permanent home.

{¶6} The children were placed in the temporary custody of CSB and later lived with a paternal aunt in South Carolina. That placement disrupted shortly afterward, however, because the aunt was not able to address P.B.'s serious mental health and behavioral problems.

{¶7} Two months before the children were placed with the aunt, Mother ceased all contact with the children, CSB, the guardian ad litem, and the juvenile court. She had outstanding warrants for her arrest and would later admit that she was using heroin and other

illegal drugs during that period. Mother did not reinitiate contact with CSB or the children until after CSB moved for permanent custody.

{¶8} On October 7, 2016, CSB moved for permanent custody of P.B. and T.B. because no other relatives were available to provide them with a suitable home. CSB alleged that the parents had failed to remedy the conditions that caused the children to be placed outside the home and/or demonstrated a lack of commitment to the children, and that permanent custody was in the children's best interest. R.C. 2151.414(E)(1) and (4); R.C. 2151.414(D). Mother alternatively requested legal custody and Father supported her motion.

{¶9} Following the final dispositional hearing, the trial court found that CSB had proven both grounds under R.C. 2151.414(E) and that permanent custody was in their best interest. Consequently, it terminated parental rights and placed the children in the permanent custody of CSB.

{¶10} The parents separately appealed and their appeals were later consolidated. Their assignments or error will be addressed together because they are closely related.

II.

### MOTHER'S ASSIGNMENT OF ERROR

THE TRIAL COURT'S DECISION GRANTING THE MOTION FOR PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

### FATHER'S ASSIGNMENT OF ERROR

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND PLAIN ERROR IN PLACING THE CHILDREN IN THE PERMANENT CUSTODY OF CSB AS THE DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶11}** Both parents argue that the trial court's permanent custody decision was not supported by the evidence. They assert that the trial court should have instead returned the children to Mother's legal custody.

**{¶12}** Before a juvenile court may terminate parental rights and award permanent custody of children to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the children are abandoned; orphaned; have been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; they or another child in a parent's custody have been adjudicated abused, neglected, or dependent on three separate occasions; or they cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the children, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

**{¶13}** The trial court found that CSB satisfied the first prong of the test because the children could not be placed with either parent within a reasonable time or should not be placed with them because the parents had failed to substantially remedy the conditions that caused the children to be removed from Mother's custody and continued to be placed outside the home and the parents had demonstrated a lack of commitment to the children. *See* R.C. 2151.414(E)(1) and (E)(4). Both of those findings were supported by clear and convincing evidence.

**{¶14}** Father had little involvement in this case, which supported the trial court's finding that he failed to remedy the conditions that caused the children to be placed outside the home and that he demonstrated a lack of commitment to them. During the first two years of the case,

Father did not attend most court hearings, did not communicate with CSB or work on the case plan, and he rarely visited the children.

{¶15} Although Mother was more actively involved in this case than Father, the evidence was not disputed that Mother had more than two years to work on the case plan but she made minimal progress toward reunification and also demonstrated a lack of commitment to the children. This case began because P.B. had been the victim of domestic violence by Tyler. Although Mother agreed to keep Tyler away from the children so that she could retain custody of them, she failed to abide by the no contact order. The children were later removed from Mother's custody because she continued to expose them to Tyler, who was physically abusive to the children and her.

{¶16} Mother obtained a psychological assessment, during which she revealed that she had a long history as a victim of domestic violence and that she suffered from severe depression, including suicidal ideation. Mother was ordered to attend ongoing counseling, but she sporadically attended sessions for only two months.

{¶17} Moreover, Mother failed to maintain consistent contact with CSB or the children. One and one-half years into this case, Mother dropped out of counseling and disappeared for a period of several months. After CSB moved for permanent custody, Mother reinitiated contact with CSB and the children. Mother disclosed that she had been using heroin and other illegal drugs, an obstacle to reunification that had not been part of the case plan because CSB was not aware that Mother had a substance abuse problem. At the hearing, the caseworker expressed concern that Mother's decision-making skills had only regressed during the two and one-half years that this case was pending. Consequently, the parents have failed to demonstrate that the

trial court's first-prong findings under R.C. 2151.414(E)(1) and (4) were not supported by the evidence.

{¶18} The parents also argue that the trial court's best interest finding was not supported by the evidence. When determining the children's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the children, their wishes, their custodial history, and the need for permanence in their lives. *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11.

{¶19} The children did not have consistent interaction with their parents during this case. After the children were removed from Mother's custody, neither parent visited them regularly. Although Mother resumed weekly visits with the children approximately one month after CSB moved for permanent custody, the evidence was not disputed that she had no contact with them for several months before that time. Father does not dispute that he did not visit the children or call them for 19 months prior to the hearing.

{¶20} Both children had expressed their desire to return to Mother's custody, but the guardian ad litem opined that permanent custody was in their best interest because Mother had not adequately resolved her parenting problems. P.B. wanted to live with Mother, but he also expressed concern that she would not be able to care for him, given her history. Mother had not protected the children from Tyler, nor had she assured that P.B. attended counseling to address his serious depression. Several witnesses explained that P.B. had assumed the role of caretaker for his brother and that he suffered from serious guilt about his injuries that caused CSB involvement with his family.

{¶21} After their removal from Mother's custody, the children had spent more than two years moving from one temporary placement to another, which had only exacerbated P.B.'s

mental health problems. The children were in need of a legally secure permanent placement. Neither parent was prepared to provide them with a suitable permanent home and CSB had been unable to find any relatives who were willing to do so. The trial court reasonably concluded that a legally secure permanent placement would only be achieved by placing them in the permanent custody of CSB.

{¶22} The parents have failed to demonstrate that the trial court's permanent custody decision was not supported by clear and convincing evidence. Their assignments of error are overruled.

### III.

{¶23} The assignments of error of Mother and Father are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

SHUBHRA N. AGARWAL, Attorney at Law, for Appellant.

AVIVA WILCHER, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

GINA D'AURELIO, Attorney at Law, for Appellee.

JOSEPH KERNAN, Guardian ad Litem.